WALLACE, JUDGE:
The claimant was the successful bidder to construct, for the respondent, a highway from U.S. Route 50 to an industrial park adjacent to Benedum Airport in Harrison County just east of Bridgeport, West Virginia, known as Project APL-91-45 (001).
The claimant filed its claim listing three parts, designated as Claim No. 1, Claim No. 2 and Claim No. 3 growing out of the construction.
Claim No. 1 in the amount of $1,542.76 was for compensation claimed for additional work performed excavating around a waterline owned by the City of Bridgeport, which line was not shown on the original plans and specifications and not considered in the bid for the project.
Claim No. 2 was for reimbursement of $1,274.20 paid by the claimant to the City of Bridgeport for repairing a break in the waterline.
Claim No. 3 was for payment of $25,915.40 for rock fill obtained and used from unclassified material within construction limits of job site.

*218
Claim No. 1 and Claim No. 2

Claim No. 1 and Claim No. 2 will be considered together.
After the claimant commenced work on the project, it was determined there was a waterline within the construction limits belonging to the City of Bridgeport, which line was not shown in the plans and specifications and not considered in the bid. The pipe was located in an unstable area. The respondent instructed the claimant to remove the unstable material underneath the pipe and replace it with rock to prevent an impoundment of water. This would enable water to bleed out of the unstable area.
The claimant first excavated manually then changed to mechanical equipment. As the unstable material was excavated it kept falling in and the ditch became larger than the respondent had directed. One of the claimant’s witnesses testified that, due to the expense, no shoring or sheeting was used. The claimant dug eight to ten feet under a ten foot section of pipe which was covered by a concrete truss. The weight of the concrete and the pipe caused it to break and spread water over the area. Claimant did not have the necessary equipment to repair the waterline so employees of the City of Bridgeport did the repair work, and the City billed the claimant for $1,274.20.
The Court is of the opinion and finds that the claimant should be compensated for the extra work not anticipated in the original bid price but not for the damages to the waterline caused by claimant’s negligence in failing to provide proper shoring and sheeting to prevent’ a break in the waterline located in unstable material. Therefore, Claim No. 1 in the amount of $1,542.76 is allowed. Claim No. 2 is disallowed.

Claim No. 3

The project was located in a slip area. The plans required unstable material to be removed and to be replaced with rock to stabilize the rock base. 14,980 cubic yards of rock were to have been brought on the job from an outside site. The contract was considered to be a “waste job”, that is, there was more material located within the area than necessary for completion, which had to be removed.
The claimant was in the process of wasting the material and encountered rock within the excavation boundaries of the project, which rock was approved by the respondent for use in the select *219 rock fill embankments. This eliminated the requirement to waste all excess material and bring in rock from an outside site. The rock used had to be shot, drilled and sized for its proper use while the unclassified material was essentially “pan or scraper” material and easier to remove.
The contract bid price provided for $1.73 per cubic yard for both the unclassified material and the select rock.
The claimant contends that it should be paid at both the unclassified rate and the rock borrow rate which it would have received if the rock had been brought in from an outside site.
The respondent contends that the claimant would be receiving payment twice for the same material.
Verbal request for payment was made prior to the completion of the contract and again in writing after the work was completed, which payment was refused by the respondent.
The claimant introduced evidence that the respondent had previously paid both items to S. J. Groves and Son Company on Project 1-79-2 (24) 109-C-l, Harrison and Lewis Counties and also in conjunction with Project S-682 (4), in Lewis County.
For further support of its contention, the claimant cited Section 104.6 of the Standard Specifications of 1968 adopted by the respondent, which section provides in part:
“The Contractor, with the approval of the Engineer, may use in the project such stone, gravel, sand, or other material determined suitable by the Engineer, as may be found in the excavation and will be paid both for the excavation of such materials at the corresponding contract unit price and for the pay item for which the excavated material is used...
We agree with the claimants contention. The contract provided that the claimant would be paid for the wasting of unclassified material and for rock obtained from a site outside of the construction limits. Instead, sufficient select rock was found within the construction limits wnich was approved by the respondent for use on the job. This material was removed, sized for proper use and utilized.
Contracts let by the respondent for road and bridge construction, in addition to the conditions contained in the respective contracts, are governed and controlled by the Standard Specifications *220 adopted by the respondent whether specifically set out in the contract or by reference thereto.
In the instant case, the 1968 Standard Specifications are to be considered in conjunction with and as a part of the contract.
It is the opinion of this Court that the respondent is bound by its own adopted specifications and that the claimant is entitled to be paid for the select rock fill. Accordingly, Claim No. 3 in the amount of $25,915.40 is allowed.
In conclusion, to summarize the findings herein, this Court allows Claim No. 1 in the amount of $1,542.76 and Claim No. 3 in the amount of $25,915.40 for a total award of $27,458.16.
Award of $27,458.16.